## Norfolk

SHIRL D. BARKLEY and

VIRGINIA EMPLOYMENT COMMISSION

v.

PENINSULA TRANSPORTATION DISTRICT
COMMISSION

No. 0206-90-1

Decided November 20, 1990

318

COUNSEL

Susan R. Stevick (Peninsula Legal Aid Center, on brief), for appellant, Shirl D. Barkley.

Thomas E. Glascock, for appellee.

OPINION

**KOONTZ, C.J.**—Shirl D. Barkley, appellant, was denied unemployment benefits by order of the Circuit Court of the City of Hampton dated December 12, 1989. On appeal, Barkley argues that the trial court erred in finding that the Peninsula Transporta-

tion District Commission (Pentran), appellee, met its burden of proof in establishing misconduct by appellant. We disagree and affirm.

In a hearing before a deputy commissioner of the Virginia Employment Commission, Barkley was found to be qualified to receive unemployment benefits. Pentran appealed the deputy commissioner's decision to the appeals examiner who conducted a hearing on Pentran's contention that Barkley was discharged for work related misconduct as defined in the Virginia Unemployment Compensation Act (Act). *See* Code § 60.2-618(2).[1] The appeals examiner reversed the deputy commissioner's decision and held Barkley was disqualified from receiving benefits under the Act. Barkley appealed that decision to the special examiner, who held Pentran failed to meet its burden of proof in establishing misconduct by Barkley. Pentran appealed the special examiner's decision to the circuit court, which in the hearing held December 12, 1989, reversed the special examiner's decision. This appeal followed.

The following undisputed facts were ascertained by the Employment Commission and the circuit court during the earlier appeals and hearings of this case. Barkley was employed as a part-time bus driver by Pentran, a public agency providing public mass transit services. Pentran had a Substance Abuse Policy prohibiting the use of drugs and alcohol both on and off duty, regardless of whether job performance was impaired. Barkley was alerted to Pentran's policy at an employee group meeting, although there is no evidence that she was personally handed a copy of the policy. Nonetheless, she was aware she would be subject to suspension if she tested positive for drugs or alcohol.

In her attempt to become reclassified as a full time employee, Barkley was required to submit to a physical examination pursuant to Pentran's Substance Abuse Policy. On February 15, 1989, Pentran advised Barkley she had tested positive for marijuana use in her alcohol/drug screening test administered on January 27, 1989. Pentran suspended Barkley from work without pay for sixty days and directed her to complete a drug rehabilitation program as a prerequisite to continued employment. Barkley entered a re-

---

[1] "An individual shall be disqualified for benefits . . . if the Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work."

habilitation program in accordance with Pentran's Substance Abuse Policy and applied for unemployment benefits on February 26, 1989. However, Barkley failed to show Pentran or the Employment Commission that she completed the rehabilitation program as required for regaining employment.

During the administrative appeals process, Barkley admitted she smoked marijuana at a social gathering on January 7, 1989. She was not scheduled to work that day or the following day and was not on call during that time. While aware of the potential for being tested and suspended, she was unaware the marijuana would be detectable in her system three weeks later. Pentran never introduced evidence of the drug test results or evidence regarding the chain of custody of Barkley's test specimen. Based on these facts, the circuit court held that Pentran had met its burden of proving Barkley had deliberately violated a known company policy. Further, the court ruled that Pentran was not required to present evidence of the actual drug test results or the chain of custody of Barkley's specimen since Barkley admitted smoking marijuana.

On appeal, Barkley asserts that Pentran failed to produce sufficient evidence to meet its burden of proving misconduct by her. She also asserts that the circuit court abused its discretion by reversing the special examiner's decision that Pentran failed to carry its burden. We disagree.

■■■ The purpose of the Act is to "provide temporary financial assistance to workmen who [become] unemployed without fault on their part. The statute as a whole . . . should be so interpreted as to effectuate that remedial purpose implicit in its enactment." *Ford Motor Co. v. Unemployment Compensation Comm'n*, 191 Va. 812, 824, 63 S.E.2d 28, 33-34 (1951). Thus, employees who are discharged from their employment due to work-related misconduct do not qualify for assistance. Code § 60.2-618(2); *see, e.g., Virginia Employment Comm'n v. Sutphin*, 8 Va. App. 325, 328, 380 S.E.2d 667, 669 (1989). Still, the employer bears the burden of showing there was "misconduct connected with the work, either by violation of a rule or by an act manifesting a willful disregard of the employer's interest." *Virginia Employment Comm'n v. Gantt*, 7 Va. App. 631, 635, 376 S.E.2d 808, 811, *aff'd en banc*, 9 Va. App. 225, 385 S.E.2d 247 (1989).

In *Branch v. Virginia Employment Comm'n*, 219 Va. 609, 249 S.E.2d 180 (1978), the Virginia Supreme Court interpreted the phrase "misconduct in connection with his work." The court stated:

> [A]n employee is guilty of "misconduct in connection with his work" when he *deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a *willful* disregard of those interests and the duties and obligations he owes his employer.

*Id.* at 611, 249 S.E.2d at 182. Consequently, an employer must provide "proof of a deliberate violation of a company rule" in order to show misconduct by an employee. *Sutphin*, 8 Va. App. at 329, 380 S.E.2d at 669. Once the employer has met its burden, the employee may produce evidence of mitigating circumstances that the trier of fact must balance against the employer's "legitimate business interest being protected to determine whether the employee demonstrated a willful disregard of the employer's interest." *Gantt*, 7 Va. App. at 635, 376 S.E.2d at 811. "Therefore, in order to constitute misconduct, the total circumstances must be sufficient to find a deliberate act of the employee which disregards the employer's business interest." *Id.*

On appeal, "the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Code § 60.2-625(A); *see Sutphin*, 8 Va. App. at 327, 380 S.E.2d at 668; *Israel v. Virginia Employment Comm'n*, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988). However, whether an employee's behavior constitutes misconduct in connection with his work, according to Code § 60.2-618(2), "is a mixed question of law and fact reviewable by this court on appeal." *Sutphin*, 8 Va. App. at 327, 380 S.E.2d at 668; *Israel*, 7 Va. App. at 172, 372 S.E.2d at 209.

In the present case, Pentran has a legitimate business interest in ensuring that its employees are drug free. As a company supplying public transportation, Pentran is responsible for the lives of its passengers. Increased safety through the prohibition of drug use by its drivers is a business interest of great weight.

This court recently has decided two cases where employees were fired from their jobs after testing positive for marijuana use. *See Sutphin*, 8 Va. App. 325, 380 S.E.2d 667; *Blake v. Hercules, Inc.*, 4 Va. App. 270, 356 S.E.2d 453 (1987). In both cases, the employer had strong, legitimate business interests in prohibiting drug use, yet the employee was not disqualified from receiving benefits since the employer failed to show the employee deliberately violated a known company rule. In neither case was there any evidence indicating the employees intentionally ingested marijuana or were aware they were doing so. Here, the evidence established that Barkley intentionally violated a Pentran policy rule. The evidence shows she was informed of Pentran's Substance Abuse Policy at a group meeting and was aware she would be suspended if she tested positive for drugs. She admitted smoking marijuana. The fact she did not believe she would test positive three weeks after smoking the marijuana only indicates she did not believe she would be caught violating the rule; her belief provides no legitimate basis in mitigation of her conduct.

Finally, Barkley presented evidence in mitigation that she smoked the marijuana at a time when she was not scheduled to return to work for two days and was not on call. On this record, we cannot say the evidence in mitigation, when balanced against the employer's substantial interest in ensuring the safety of its passengers, was sufficient to excuse her intentional violation of company policy and thus excuse her from the bar of work-related misconduct. We also agree with the circuit court's holding that Pentran was not required to introduce the test results and establish a chain of custody.

For these reasons the judgment appealed from is

*Affirmed.*

Coleman, J., and Keenan, J., concurred.